COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 
2-02-330-CV

DANNY FITZGERALD                                                             APPELLANT 
 
V.
 
EROY HARRY                                                                           APPELLEE 
 
------------
 
FROM THE 67TH DISTRICT COURT OF 
TARRANT COUNTY 
 
------------
 
MEMORANDUM OPINION



 
------------
I. Introduction
        This is an appeal from a summary judgment entered in a wrongful 
foreclosure suit. Appellant Danny Fitzgerald claims that the trial court erred by 
denying his motion for partial summary judgment and by granting Appellee Eroy 
Harry’s motion for summary judgment. In his first two points, Fitzgerald 
complains that Harry was not entitled to summary judgment because Fitzgerald 
was not afforded proper notice and opportunity to cure under section 51.002 
of the property code, and because fact issues exist about whether Harry waived 
or abandoned any alleged accelerations prior to January 26, 2001. In his third 
point, Fitzgerald complains that the trial court erred by denying his motion for 
partial summary judgment because he proved wrongful foreclosure as a matter 
of law. We will affirm. 
II. Background Facts
        In 1987, Fitzgerald and his wife 


 executed an $80,000 note payable to 
Eroy Harry in exchange for the purchase of real property—a residence located 
at 611 Ruth in Kennedale, Texas. To secure payment of the $80,000 note, 
Fitzgerald granted Harry a deed of trust on the residence. In the event that 
Fitzgerald defaulted on the note or failed to perform any of his obligations as 
grantor, the deed of trust empowered Harry to declare the unpaid principal 
balance and earned interest on the note immediately due and to pursue 
foreclosure proceedings as provided in the Texas Property Code. 
        In late 1999, Fitzgerald defaulted on the note. By letters dated 
September 24, 1999 and October 14, 1999, Harry notified Fitzgerald of the 
default and gave notice of his intent to accelerate Fitzgerald’s payments due 
under the note. 


 By certified mail dated November 15, 1999, Fitzgerald was 
notified that, due to his failure to cure the delinquency as previously instructed, 
the note had been accelerated, and the residence would be sold at a foreclosure 
sale on December 7, 1999. 
        Fitzgerald filed a voluntary petition for bankruptcy protection on 
December 3, 1999, preventing the scheduled foreclosure sale from taking 
place. The bankruptcy court dismissed the petition on May 24, 2000, due to 
Fitzgerald’s “fail[ure] to timely pay the Trustee pre-confirmation payments 
specified in the Debtor’s Preliminary Plan.” The final accounting provided by 
the bankruptcy trustee lists Harry as a secured creditor and indicates that no 
payments were made toward the outstanding debt while the bankruptcy 
petition was pending. 
        Soon after the bankruptcy petition was dismissed, Fitzgerald was notified 
by certified mail of the continuing delinquency on the note. The letter, dated 
June 1, 2000, informed Fitzgerald that he remained delinquent in the payment 
of the May through December 1999 installments on the note as well as the 
March through June 2000 installments, stated the total amount of the 
delinquency, and demanded full payment by June 12, 2000. Fitzgerald failed 
to cure the default and was sent notice of acceleration and notice of a 
foreclosure sale scheduled for July 4 by certified mail on June 13, 2000. To 
avoid losing his residence at the foreclosure sale, Fitzgerald filed another 
voluntary petition for bankruptcy protection on June 30, 2000. The bankruptcy 
court dismissed this petition on December 28, 2000, again due to Fitzgerald’s 
failure to timely make the required pre-confirmation payments to the bankruptcy 
trustee. The bankruptcy court issued notices of dismissal to Fitzgerald’s 
creditors on January 12, 2001. 
        On January 26, 2001, the substitute trustee under the deed of trust again 
contacted Fitzgerald regarding the delinquent status of the note. The letter 
stated that Fitzgerald remained delinquent in the May through December 1999 
and September through December 2000 installments on the note and in the 
payment of ad valorem taxes on the property and demanded full payment by 
February 9, 2001. Fitzgerald did not cure the delinquency and was notified by 
certified mail on February 9, 2001, that the note had been accelerated and that 
a foreclosure sale would be held on March 6, 2001. Fitzgerald took no further 
action, and Harry purchased the residence at the March 6 foreclosure sale. 
        Fitzgerald filed suit against Harry alleging wrongful foreclosure and DTPA 
violations, which Harry generally denied. Fitzgerald then filed a motion for 
partial summary judgment on his wrongful foreclosure claim, alleging that, as 
a matter of law, Harry had failed to provide him with proper notice of intent to 
accelerate the debt and twenty days to cure the default as required by the 
property code. Harry responded and filed a competing motion for summary 
judgment asserting that the March 6, 2001 foreclosure was not wrongful and 
that, therefore, Fitzgerald’s claims could not succeed. The trial court granted 
Harry’s motion for summary judgment and denied Fitzgerald’s motion for partial 
summary judgment on July 23, 2002. 
III. Standard of ReviewIn a summary judgment case, the issue on appeal is whether the movant
met his summary judgment burden by establishing that no genuine issue of
material fact exists and that the movant is entitled to judgment as a matter of
law. Tex. R. Civ. P. 166a(c); S.W. Elec. Power Co. v. Grant, 73 S.W.3d 211,
215 (Tex. 2002); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671,
678 (Tex. 1979). The burden of proof is on the movant, and all doubts about
the existence of a genuine issue of material fact are resolved against the
movant. S.W. Elec. Power Co., 73 S.W.3d at 215; Rhone-Poulenc, Inc. v.
Steel, 997 S.W.2d 217, 223 (Tex. 1999); Great Am. Reserve Ins. Co. v. San
Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965). Therefore, we
must view the evidence and its reasonable inferences in the light most favorable
to the nonmovant. Great Am., 391 S.W.2d at 47.
        In deciding whether there is a material fact issue precluding summary 
judgment, all conflicts in the evidence are disregarded, and the evidence 
favorable to the nonmovant is accepted as true. Rhone-Poulenc, 997 S.W.2d 
at 223; Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 
1995). Evidence that favors the movant’s position will not be considered 
unless it is uncontroverted. Great Am., 391 S.W.2d at 47. 
        The summary judgment will be affirmed only if the record establishes that 
the movant has conclusively proved all essential elements of the movant’s 
cause of action or defense as a matter of law. Clear Creek Basin, 589 S.W.2d 
at 678. 
        A defendant is entitled to summary judgment if the summary judgment 
evidence establishes, as a matter of law, that at least one element of a 
plaintiff’s cause of action cannot be established. Elliott-Williams Co. v. Diaz, 
9 S.W.3d 801, 803 (Tex. 1999). The defendant as movant must present 
summary judgment evidence that negates an element of the plaintiff’s claim. 
Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995). Once the 
defendant produces sufficient evidence to establish the right to summary 
judgment, the burden shifts to the plaintiff to come forward with competent 
controverting evidence raising a genuine issue of material fact with regard to 
the element challenged by the defendant. Id. 
IV. DiscussionA. Notice of Default and Opportunity to Cure
        In his first point, Fitzgerald complains that the trial court erred by granting 
Harry’s motion for summary judgment because Fitzgerald was not provided 
sufficient notice of intent to accelerate the note and opportunity to cure under 
section 51.002(d) of the property code. Tex. Prop. Code Ann. § 51.002 
(Vernon 1995) Section 51.002 of the property code governs the sale of real 
property under a contract lien. Id. It provides in part that: 
(b) Notice of the sale, which must include a statement of the
earliest time at which the sale will begin, must be given at least 21
days before the date of the sale:
 
. . . . 
 
(3) by the holder of the debt to which the power of sale 
is related serving written notice of the sale by certified mail on each 
debtor who, according to the records of the holder of the debt, is 
obligated to pay the debt. 
 
. . . . 
 
(d) Notwithstanding any agreement to the contrary, the 
holder of the debt shall serve a debtor in default under a deed of 
trust or other contract lien on real property used as the debtor’s 
residence with written notice by certified mail stating that the 
debtor is in default under the deed of trust or other contract lien
and giving the debtor at least 20 days to cure the default before
notice of sale can be given under Subsection (b). 

Id. § 51.002(b), (d) (emphasis added). 
        Fitzgerald argues that none of the demand letters contained in the 
appellate record complied with section 51.002 because they failed to offer him 
twenty days to cure the alleged default. Id. § 51.002. However, undisputed 
summary judgment evidence in the record clearly establishes that Fitzgerald did 
receive the required twenty days’ notice and opportunity to cure. 
        The November 15, 1999 notice of acceleration and notice of foreclosure 
sale references the fact that Fitzgerald was notified in writing of the note’s 
delinquent status on September 24, 1999. This letter indicates that the 
September 24, 1999 notice of delinquency gave Fitzgerald until October 25, 
1999, to cure—granting Fitzgerald a thirty-day period within which to cure the 
default and prevent acceleration of the note. Fitzgerald does not contend that 
the September 24, 1999 notice of default was not actually given; in fact, he 
acknowledged receiving the notice while under oath at his deposition. Thus, 
Fitzgerald admitted receipt of more than the twenty day opportunity to cure 
required by section 51.002(d). Id. § 51.002(d) 
        Harry’s first foreclosure attempt following this notice was prevented by 
Fitzgerald’s December 3, 1999 bankruptcy petition and attendant automatic 
stay. Thereafter, Fitzgerald was twice provided with additional time to cure the 
default and avoid continuation of foreclosure proceedings against him. The 
record establishes that Fitzgerald was notified of the note’s delinquent status 
on June 1, 2000, and again on January 26, 2001, after the dismissal of his 
second bankruptcy petition. These two letters provided Fitzgerald with twelve 
days and fourteen days, respectively, of additional time to cure the delinquency 
before foreclosure proceedings would recommence. Although neither of these 
demand letters, standing alone, provide the required twenty-day opportunity to 
cure, Fitzgerald cites no authority for the proposition that bankruptcy restarts 
the timetable of notice of default and opportunity to cure under the property 
code. In fact, neither the automatic stay provision of the bankruptcy code nor 
applicable case law supports such a conclusion. See 11 U.S.C.A. § 362 (West 
1993 & Supp. 2003); see also Thompson v. Chrysler First Bus. Credit Corp., 
840 S.W.2d 25, 31 (Tex. App.—Dallas 1992, no writ) (approving creditor’s 
action of proceeding with foreclosure immediately upon dismissal of bankruptcy 
petition without making any further demand upon debtor). The summary 
judgment evidence before us conclusively establishes that Harry effectively 
accelerated the note before Fitzgerald’s December 1999 bankruptcy. Harry 
was not required to repeatedly provide notice of default and an additional 
twenty days to cure thereafter. See Thompson, 840 S.W.2d at 31. 
        Although the September 24, 1999 notice is not in the clerk’s record, this 
omission is not evidence that the September 24, 1999 notice was inadequate, 
as Fitzgerald seems to claim. Fitzgerald confirmed under oath that he received 
the September 24, 1999 notice of default and opportunity to cure as referenced 
in the November 15, 1999 notice of acceleration letter, and he has not alleged 
any specific deficiency in the notice. Even viewing the evidence in the light 
most favorable to Fitzgerald, we cannot create a deficiency where none is 
reflected in the record. The summary judgment evidence in the record, 
including Fitzgerald’s own testimony, conclusively establishes as a matter of 
law that Fitzgerald received notice of default and more than twenty days’ 
opportunity to cure before foreclosure proceedings were instigated in 1999. 
Consequently, we hold that the trial court properly granted Harry’s motion for 
summary judgment. We overrule Fitzgerald’s first point. 
B. Waiver/Abandonment of Acceleration
        In his second point, Fitzgerald argues that Harry abandoned any 
acceleration of the note before January 26, 2001. He contends that the use 
of future tense in the January 2001 letter in the phrase “In the event you do 
not pay your note payments . . . your unpaid note balance will be accelerated” 
indicates that any previous acceleration had been waived or abandoned. 
Fitzgerald also asserts that he made payments on the note after it had been 
allegedly accelerated in 1999 and 2000, thus proving Harry’s abandonment of 
those accelerations. 
        “Even when a noteholder has accelerated a note upon default, the holder 
can abandon acceleration if the holder continues to accept payments without 
exacting any remedies available to it upon declared maturity.” Holy Cross 
Church of God in Christ v. Wolf, 44 S.W.3d 562, 566-67 (Tex. 2001) 
(emphasis added). The summary judgment evidence before us conclusively 
establishes that Harry continuously pursued his attempts to secure full payment 
on the note or to foreclose upon the property from the time he first notified 
Fitzgerald of the default in September 1999 until the date of foreclosure in 
March 2002. Harry clearly and unequivocally notified Fitzgerald of the 
delinquency and his intent to accelerate the note in September 1999, as 
Fitzgerald himself admitted under oath. Harry took steps toward foreclosure in 
1999, sending the required notice and scheduling a foreclosure sale. Following 
the dismissal of each of Fitzgerald’s bankruptcy petitions, Harry expeditiously 
resumed his attempts to obtain full payment on the note or move forward again 
with foreclosure. And, after Fitzgerald filed his second bankruptcy petition 
preventing foreclosure, Harry filed a motion to have the automatic stay lifted 
so that he could proceed with the sale. Thus, contrary to Fitzgerald’s 
assertions, the record highlights Harry’s unflagging persistence in pursuit of 
foreclosure after the initial acceleration of the note. Neither the wording of the 
last-chance demand letter nor Fitzgerald’s vague assertion in his deposition that 
Harry accepted late payments at some point raises a genuine issue of material 
fact controverting Harry’s consistent attempts to “exact the remedies available 
to” him after accelerating on the note. See Thompson, 840 S.W.2d at 30-31 
(concluding that in spite of two-year lapse since notice of acceleration, 
intervening bankruptcy of maker of note, and creditor’s acceptance of 
payments during that time, that creditor was under no duty to re-demand and 
re-accelerate note after bankruptcy dismissed). We hold that no genuine issue 
of material fact regarding abandonment of acceleration was raised in this case. 
Fitzgerald’s second point is overruled. 
C. Fitzgerald’s Motion for Partial Summary Judgment
        In his third and final point, Fitzgerald complains that the trial court erred 
by denying his motion for partial summary judgment on the issue of wrongful 
foreclosure based upon his arguments in points one and two above. In light of 
our holding above that Harry conclusively established his right to summary 
judgment and that no fact issue exists regarding abandonment of acceleration, 
we hold that Fitzgerald was not entitled to partial summary judgment on his 
wrongful foreclosure claim. We overrule Fitzgerald’s third point. 
 
V. Conclusion 
Having overruled each of Fitzgerald’s points, we affirm the trial 
court’s 
judgment.
 
                                                          SUE WALKER 
                                                          JUSTICE
 
 
PANEL F:   CAYCE, C.J.; GARDNER, and WALKER, JJ. 
 
DELIVERED: September 18, 2003